## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| Samir Bolden, A Minor by and, | ) | CASE NO.  1:12 CV 1666 |
| Through his Parent Patricia Bolden, | ) | |
|  et al. | ) | |
| Plaintiffs, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| The City of Euclid, et al., | ) | Memorandum of Opinion and Order |
| | ) | |
| Defendants. | ) | |

**Introduction**

This matter is before the Court upon defendants' Motion for Summary Judgment

(Doc. 41).  This case arises from the arrest of plaintiffs by a City of Euclid police officer. For

the following reasons, the motion is GRANTED.

**Facts**

Plaintiffs Samir Bolden, a minor by and through his parent Patricia Bolden, and

Brandon Martin, a minor by and through his parent Alesia Martin, filed this Complaint

against defendants the City of Euclid, Police Chief Thomas Brickman, Officer Paul Doyle,

1

and Officer Trevor Studley.

The events giving rise to this action occurred on March 15, 2012.  Plaintiff Bolden was 15 years old.  Plaintiff Martin was 17 years old.  (Compl.)  Plaintiff Martin testified to the following. On that date, at around 7:00 p.m., plaintiffs were walking toward E. 222nd Street in Euclid, Ohio to meet Martin's ex-girlfriend.  Plaintiffs proceeded from Naumann Street, where plaintiffs lived, to E. 210th Street.  There, they stopped briefly to talk with another friend.  At that point, they saw defendant Doyle in his police cruiser observing them.  Doyle drove off in another direction. Plaintiffs continued to walk to Nicholas Avenue and E. 215th Street, which is the location of defendant Doyle's house.  It was dark at that point, and Doyle's garage light was on.  And,

Q.  So what happens when you get to 215 and Nicholas?

A.  We were walking past Paul Doyle's house, and we got towards like where the garage area is at, and we saw a light flashing on it, which is, he was sitting right here at the stop sign of Nicholas and 215.

Q.  Was this like a search light?

A. Yes.  And he saw us walking.

Q. Okay.

A. And then he zoomed.  He hit a right fast, zoomed around the corner and told us to stop walking, and we stopped, and then he just started- - got out the car.

***

A. He got out the car upset and asked why was me and Samir looking in his house. We were nowhere by it.

Q.  I'm sorry?

2

A. He asked us why were we looking in his cameras[1] and his windows because he has cameras on his house, which everybody knows that, and he just pretty much assumed that we were looking in his cameras in his house.

Plaintiffs had not left the sidewalk before Doyle approached them.  Martin started to walk away because what Doyle was saying was not true.  Doyle pulled him back and told him to stand still.  Martin attempted to call his mother on his cell phone and Doyle "smacked" it out of his hand and threw Martin to the ground.  Martin was not injured other than a couple scratches on his leg.  Doyle held him down and handcuffed him.  Doyle called for back up and another police officer arrived.  Martin was placed in Doyle's police car and Bolden was placed in the other officer's car.  They were taken to the Euclid police station and into a conference room with Doyle, the back up officer, and the police chief.  Plaintiffs were told to "write a statement, why was we in his cameras, and I told him I wasn't writing it because I'm not writing something that I didn't do."  Martin saw Bolden writing and Doyle told Bolden to erase it and "write what he did."  Martin did not write a statement. Ultimately, Martin elected to participate in the Euclid Juvenile Diversion Program.  He agreed that this constituted an admission to the charge of criminal trespass although Martin tried to explain to the magistrate at the diversion proceedings that he was not looking into the cameras but he was advised to "just go along with it." Otherwise, "it's going to lead somewhere that you probably don't want to go." And, if he admitted to looking in the cameras, he would get "one day of community service."  (Martin depo. 17-53)

Bolden's testimony is similar to Martin's up to the point where plaintiffs approached

---

[1]     Doyle testified at the juvenile court hearing that the cameras "were not functioning that day" (Doc. 51 Ex.C at 25) and "they never functioned." (*Id.* 44)

the vicinity of Doyle's house.  At that point, according to Bolden, Doyle approached plaintiffs as they were walking on the sidewalk along Doyle's house.  Doyle grabbed Martin and pushed him into Bolden who fell into a fence.  Doyle accused the plaintiffs of being on his property and told Bolden to sit down. Bolden complied and Doyle handcuffed him after subduing Martin. Doyle kept asking Bolden, "What were you doing on my property?"  At the conference room in the police station, Doyle told Bolden to "fill out a report" and told him to "scribble out" certain things such as the word "passed" in the sentence stating that "we were walking by the officer[']s  house." Bolden completed the statement.  Ultimately, Bolden was charged in Juvenile Court with criminal trespass. (Bolden depo. 27-70; depo. Ex. A) The Cuyahoga County Court of Common Pleas, Juvenile Division, issued a Judgment Entry stating that the complaint was dismissed with prejudice, but that probable cause existed for its filing. (Doc. 41 Ex. E)

Euclid Police Officer Doyle testified that on that evening he was on patrol and intended to return to his house to pick up flashlight batteries that he had dropped off earlier in order to charge.  He had spoken to his son and instructed him to meet Doyle on the curb of E. 215 to deliver the batteries.  As Doyle pulled up to the curb, he saw "some activity on my porch," a sun porch on the side of the house, and thought it was his son coming out with the batteries.  Doyle stated:

> As I pulled up to the driveway, I realized it wasn't my son. ... I was watching, expecting my son to exit the porch.  A black kid came out of the porch.  A black kid was [] the porch and the second one next to him.  They turned and started walking diagonally across my driveway to the corner of the fence here. As they walked across the driveway so they could walk southbound on East 215, I called to them saying, "Hold up." They ignored me and continued to walk.  I pulled in front of them, exited my patrol car, and said, "Hold up right now."

4

(Doyle depo. 18-19) Doyle reiterated,

> They were right outside the sun porch door up close to the sun porch.  I believed I saw movement through the sun porch.  When I actually got to the driveway, I could see their bodies right at the door.

(*Id.* 19) When asked why they were on the property, plaintiffs denied they were on the property. Bolden complied with Doyle's orders to sit on the ground, but Martin refused and continued to argue. Martin reached into his pocket to call his parents.  He refused further orders to sit down.  As Martin tried to walk past him, Doyle forced him down to the ground. Doyle handcuffed both plaintiffs. (Doyle depo.)

Plaintiffs' Complaint sets forth 12 claims.  The first five claims are apparently asserted under § 1983 and allege deprivation of the right to equal protection (One), unreasonable search and seizure (Two), deprivation of the right to due process (Three), deprivation of the right to liberty, safety, and privacy (Four), and excessive force (Five). Count Eleven appears to be a § 1983 claim alleging deliberate indifference and a state law claim for negligent hiring, retention, and supervision. The remaining claims are state law claims and allege false arrest (Six), false imprisonment (Seven), intentional infliction of emotional distress (Eight), malicious criminal prosecution (Nine), assault (Ten), and violation of Ohio public records law (Twelve).   Each count is asserted against all defendants with the exception of Counts Five and Ten which are asserted against defendant Doyle only, and Count Eleven which is asserted against defendants City of Euclid and defendant Brickman only.

This matter is now before the Court upon defendants' Motion for Summary Judgment.

**<u>Standard of Review</u>**

5

Summary Judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).  The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)).  A fact is "material only if its resolution will affect the outcome of the lawsuit." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). Accordingly, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir.1993).  The nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

6

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322. Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citation omitted).

**Discussion**

Defendants move for summary judgment on all of plaintiffs' claims.

**(1) Federal Claims**

"To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir.2006). "A municipality can be liable under 42 U.S.C. § 1983 only if the plaintiff can demonstrate that his civil rights have been violated as a direct result of that municipality's policy or custom" or if a "failure to train amounts to deliberate indifference" to such rights. *Blackmore v. Kalamazoo County*, 390 F.3d 890, 900 (6th Cir.2004) (citing *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

Defendants argue that there was no violation of plaintiffs' constitutional rights, there is no evidence of a policy of custom so as to hold the City liable, and the claims against defendants Studley and Brickman fail as a matter of law. The Court will address the latter argument first and then proceed to the claims asserted against defendants Doyle and the City of Euclid.

**(a) Studley**

The Complaint alleges that defendant Studley is being sued in his official capacity. As recognized by defendant, such a claim is construed as an action against the City itself. "Suing a municipal officer in his official capacity for a constitutional violation pursuant to 42 U.S.C. § 1983 is the same as suing the municipality itself, and thus a successful suit against a municipal officer in his official capacity must meet the requirements for municipal liability stated in *Monell*." *Kraemer v. Luttrell*, 189 Fed.Appx. 361 (6th Cir. 2006). As such, defendants assert that because plaintiffs have also named the City of Euclid as a defendant, the claims against Studley are duplicative and must be dismissed. This Court agrees. *See Minor v. Foster,* 2013 WL 4521101 (M.D.Tenn. August 27, 2013) (citations omitted).

**(b) Brickman**

Defendant Brickman is the City of Euclid Police Chief. He is sued in his official and individual capacities. To establish liability against an individual defendant acting under color of state law, a plaintiff must show that the defendant was "personally involved." *Binay v. Bettendorf*, 601 F.3d 640 (6th Cir.2010). More particularly, the Sixth Circuit

> has held that § 1983 liability must be based on more than *respondeat superior*.... Thus, a supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it. A plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.

*Ramage v. Louisville/Jefferson County Metro Government*, 520 Fed.Appx. 341 (6th Cir. 2013) (internal quotation marks omitted) (citing *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir.1999) (quoting *Hays v. Jefferson County*, 668 F.2d 869, 874 (6th Cir.1982)).

Defendants assert that as the Complaint is completely lacking in any contention that Brickman was present at the time of and personally involved in the incident at issue and the

8

evidence shows that he had no involvement in the March 15 incident, the Complaint must be dismissed against him.

Plaintiffs maintain that although Brickman "may not have been actively involved in the incidents" (Doc. 51 at 29), there is a causal connection between his ignoring the previous complaints against Doyle and the constitutional injuries suffered by plaintiffs.

However, there is no evidence that Brickman ignored complaints against Doyle.  As discussed below, the City of Euclid investigated all the complaints most of which preceded Brickman's position as Chief of Police.

Claims against Brickman in his individual capacity must be dismissed. Additionally, for the same reasons set forth above as to Studley, the claims against Brickman in his official capacity are dismissed.

### (c) Doyle

#### (i) Equal Protection

The Complaint merely alleges that defendants deprived plaintiffs of their right to Equal Protection.  No other supporting facts are alleged.

The Sixth Circuit has recognized,

The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.... While the typical equal-protection plaintiff alleges discrimination based on membership in a protected class, a plaintiff can proceed as a "class of one" by establishing that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."

A class-of-one claim requires two steps. First, a plaintiff must demonstrate disparate treatment. Once a plaintiff shows disparate treatment, he must next demonstrate the lack of a rational basis for the challenged action.

9

Klein v. City of Jackson, 77 Fed.Appx. 317 (6th Cir. 2012) (citations omitted).

Plaintiffs argue in full that as minorities they are in a protected class and that all the evidence demonstrates that they were victims of defendants' abusive conduct aimed at minorities in the City of Euclid by Doyle for many years.

As plaintiffs provide no evidence that Doyle treated similarly situated Caucasians differently, their equal protection claim fails.

### (ii) Unlawful Search and Seizure

"To prevail on a claim of unlawful arrest, a plaintiff must prove by a preponderance of the evidence that the defendant, acting under color of state law, arrested the plaintiff without probable cause." *Mechler v. Hodges*, 2006 WL 2927253 (S.D.Ohio 2006).  In fact, "[t]he existence of probable cause for an arrest totally precludes any section 1983 claim for unlawful arrest, false imprisonment, or malicious prosecution...." *Watson v. City of Marysville*, 518 Fed.Appx. 390 (6th Cir. 2013) (quoting *Mark v. Furay*, 769 F.2d 1266, 1269 (7th Cir.1985)). "Probable cause is determined by the totality of the circumstances and from a reasonable law enforcement officer's on-scene perspective." *United States v. Craig*, 198 Fed.Appx. 459, 462 (6th Cir.2006)  Probable cause "means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Estate of Dietrich v. Burrows*, 167 F.3d 1007, 1010–11 (6th Cir.1999). The establishment of probable cause requires only a "fair probability" that the individual to be arrested has either committed or intends to commit a crime  *Frodge v. City of Newport*, 501 Fed.Appx. 519 (6th Cir. 2012).

10

Defendants contend that both plaintiffs are estopped from asserting that they were arrested without probable cause.

 "[I]t  is clear that under Sixth Circuit precedent, plaintiffs who plead guilty and receive judicial diversion are precluded from pursuing a Fourth Amendment claim for unlawful arrest." *Corvin v. Bice*, 2007 WL 776501 (E.D.Tenn.2007) (citing *Wilson v. Johnson*, 2005 WL 2417057 (E.D.Tenn.2005); *Walker v. Schaeffer*, 854 F.2d 138 (6th Cir. 1988) (holding *nolo contendere* pleas made by plaintiffs in state court criminal proceedings preclude them from asserting in federal court that the officers lacked probable cause to arrest them); *Cunningham v. Sisk*, 2003 WL 23471541 (E.D.Tenn.2003), aff'd, 2005 WL 1285649 (6th Cir. May 18, 2005) (holding that plaintiff's Fourth Amendment claim for false arrest brought pursuant to § 1983 was precluded by the state court criminal proceedings in which plaintiff plead guilty based upon the doctrine of defensive collateral estoppel); *Kirk v. Muskingum County Ohio,* 2010 WL 3702581 (S.D.Ohio 2010) (plaintiff's conviction in state court estopped § 1983 false arrest claim).

Here, defendants point to plaintiff Martin's deposition testimony that he went to the Euclid Juvenile Diversion Program and he understood "that to be essentially an admission to the charges against" him.  (Martin depo. 50-51) Defendants further point to Martin's mother's testimony that he admitted his guilt in court as part of the diversion program.  (Alesia Martin depo. 30) As for Bolden, he was charged in Juvenile Court with criminal trespass (Bolden depo. 27-70) The Juvenile Court issued a Judgment Entry dismissing the complaint but finding that probable cause existed for its filing (Doc. 41 Ex. E), and this determination was never appealed by Bolden.

11

Plaintiffs maintain that Martin's participation in the Euclid Juvenile Diversion Program is irrelevant because there is no evidence that he entered any plea or admission of guilt, and there is no written admission of guilt in connection with the program.  Although Alesia Martin testified that Brandon Martin admitted his guilt in the diversion court proceedings, she stated that Brandon denied looking in the cameras and stepping on Doyle's grass, but ultimately agreed that he put a foot on the grass in order to get the matter resolved. With regard to Bolden, plaintiffs contend that because the charge was dismissed by the Juvenile Court, there was a final disposition in his favor, regardless of the "innocuous language" in the Judgment Entry.

On the basis of the evidence presented, the Court must conclude that plaintiffs are collaterally estopped from challenging probable cause. Brandon Martin testified at deposition,

Q.  You did, in fact, go to diversion?

A. Yes.

Q.  And again, you understood that to be essentially an admission of the charges against you?

A. Yes.

(Martin depo. 51) Martin's testimony is supported by his mother's testimony that during the diversion hearing, although Martin denied looking at the cameras and stepping foot on the grass, he ultimately admitted it:

> ... then she [the magistrate] kept saying, well, if you just say that he stepped foot on Doyle's property, this will all go away, he will do just one day, and he won't have a juvenile record in regards to this matter.  I talked to Brandon. Brandon said, okay.  We went back into the courtroom.  The lady asked Brandon again, are you guilty, or did you look in Doyle's camera?  And Brandon said, I didn't look in Doyle's camera, and I didn't put my foot on the grass. She said, you put your foot on Doyle's grass, right?... and Brandon said, yeah.

12

(Alesia Martin depo. at 30) Thus, regardless of Martin's motivation, he did admit to the charge.  Although plaintiffs point out that the papers outlining the Euclid Police Department Juvenile Diversion program are silent as to whether an admission of guilt is required, it would be nonsensical to find otherwise. In fact, Martin admitted at deposition that he understood participation in diversion as an admission to the charges. This is corroborated by his mother's testimony that the magistrate at the diversion hearing was intent on getting Martin to admit that he trespassed.  Therefore, the Court finds that an admission of guilt was necessary.  A juvenile admission is akin to an adult guilty plea which precludes a civil false arrest claim. *See Ehly v. City of Philadelphia*, 2004 WL 2583818 (E.D.Pa. 2004) (holding that a juvenile who has entered an admission of guilt in delinquency proceedings is precluded from bringing a later civil cause of action inconsistent with the admission).

As for Bolden, a trial was held in the Juvenile Court before a Magistrate.  Bolden was represented by counsel and witnesses were called.  The Court is not presented a full transcript of the hearing.  (See 51 Ex. C)  The Juvenile Court issued a Judgment Entry stating that it affirmed the Magistrate's decision and dismissed the criminal trespass complaint against Bolden.  (Doc. 41 Ex. E) The Judgment Entry further stated that probable cause was found for the filing of the complaint.  (*Id.*)  Bolden did not appeal this determination.  Based on the evidence, the Court can conclude that there was a state court judgment finding probable cause.[2]

---

[2]     Although plaintiffs are suspicious of the probable cause finding, plaintiffs do not provide evidence calling it into question.  Because a finding was made, the Court can assume that Bolden had a full and fair opportunity to litigate the issue. Plaintiffs fail to provide evidence to the contrary and do not show that the Juvenile Court acted inappropriately.

For these reasons, plaintiffs are precluded from asserting an unlawful arrest claim.[3]

### (iii) Due Process

The Complaint alleges a deprivation of Due Process with no supporting facts. Plaintiffs do not indicate whether the claim is for substantive or procedural Due Process. "The touchstone of due process is protection of the individual against arbitrary action of government, whether the fault lies in a denial of fundamental procedural fairness, or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective." *Wendrow v. Michigan Dept. of Human Services* --- Fed.Appx. ----, 2013 WL 4530055 (6th Cir. 2013) (citations omitted).

The sum of plaintiffs' argument as to this claim is that the evidence plainly establishes that a genuine issue of material fact exists in that plaintiffs "were lawfully walking down the street when they were unlawfully stopped, detained, arrested, handcuffed, interrogated, and prosecuted." (Doc. 51 at 25)

As plaintiffs fails to demonstrate that this could be a basis for a due process violation, plaintiffs fail to survive summary judgment on a due process claim.

### (iv) Liberty, Safety, and Privacy

This claim, too, is merely asserted with no factual support. Plaintiffs do not address this claim in their brief and summary judgment is appropriate for the reasons stated by

---

[3]     Defendants additionally assert that even without these findings, Doyle had articulable probable cause to believe that plaintiffs had committed criminal trespass and the "undisputed" facts establish that his actions were at all times objectively reasonable.  But the facts are disputed because the plaintiffs testified that they were on the sidewalk at all times and never went on to Doyle's property.

14

defendants.

### (v) Excessive Force

The standard of reviewing an excessive force claim is well-established:

"The Fourth Amendment prohibits the use of excessive force by arresting and investigating officers." *Smoak v. Hall*, 460 F.3d 768, 783 (6th Cir.2006). In evaluating whether this prohibition has been violated, we employ an "objective reasonableness" test, which requires us to determine "whether the officers' actions [we]re 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386 (1989). "The test is fact specific, not mechanical, and the three most important factors for each case are: (1) the severity of the crime at issue; (2) the threat of immediate danger to the officers or bystanders; and (3) the suspect's attempts to resist arrest or flee." *Wysong v. City of Heath*, 260 F. App'x 848, 854 (6th Cir.2008).

Furthermore, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. And our inquiry must be conducted with "allowance for the fact that police officers are often forced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving about the amount of force that is necessary in a particular situation." *Id*. at 397.

*Wells v. City of Dearborn Heights*, --- Fed.Appx. ----, 2013 WL 4504759 (6th Cir. 2013).

Pointing to plaintiffs' deposition testimony, defendants assert that the use of force used by Doyle as to both plaintiffs was *de minimus* and objectively reasonable under the circumstances. Bolden testified that Doyle pushed Martin into him and Bolden stumbled into the fence but was not injured other than his shoulder hurt where it had hit the fence.  Bolden complied with Doyle's command to sit down. Doyle handcuffed Bolden and Bolden asked one of the back-up officers to loosen the cuffs because Doyle had put them on "extremely tight." The officer loosened the cuffs and Bolden's wrists were "swollen and tender for the next day."   (Bolden depo. 39-54)   Martin testified that Doyle exited his car and began asking plaintiffs why they were looking at his cameras and his windows.  When Martin started to

walk away, Doyle pulled him back and smacked the phone out of his hand.  Doyle forced

Martin to the ground with his knee in his back and his forearm on his neck.  Martin was not

injured during this process except that he had a "couple scratches" on his leg.  Once on the

ground, Doyle put his knee on Martin's face and handcuffed him.  Martin was not injured in

any way by this. (Martin depo. 28-34)

> Plaintiffs assert,
>
> Plaintiffs were mere children who posed no risk or danger to the Defendants. Further,
> Plaintiff Bolden complied with all instructions and Plaintiff Martin was just trying to
> call his mother. Combine this with the fact that the Plaintiffs never posed a risk to
> Doyle (and merely denied his accusations that they were on his property) Doyle's
> conduct constitutes excessive force. Moreover, Plaintiffs were assaulted by Doyle
> when they were on the sidewalk, they were not even on Doyle's property (assuming,
> arguendo, Doyle's story is even believed).
>
> ***
>
> Given the facts as set forth for this Honorable Court as well as the violent and abusive
> past of Defendant Doyle, genuine issue of material facts exist with regard to the
> Plaintiffs' claim for excessive force
>
> ***
>
> In this case, when the (alleged) offense is non-violent, the arrestees posed no
> immediate safety threat and the arrestees had not attempted to escape and were not
> actively resisting, whether Doyle's actions constitute excessive force is a question for
> a jury.

(Doc. 51 at 26-27)

On this basis, plaintiffs do not dispute that their injuries were anything other than *de

minimus.*  Moreover, even according to Martin's own testimony he disregarded Doyle's

orders to stop and reached into his pocket for his phone.  Clearly, both actions justify some

force in controlling the situation. Additionally, to survive summary judgment on an excessive

force claim relating to handcuffing, a plaintiff must create a genuine issue of material fact

that: (1) he complained that the handcuffs were too tight; (2) the officer ignored those complaints; and (3) the plaintiff experienced some physical injury resulting from the handcuffing. *Stricker v. Township of Cambridge,* 710 F.3d 350 (6th Cir. 2013).  When Bolden asked one of the officers to loosen his cuffs, it was done.

There is no evidence of excessive force.

For these reasons, the claims against Doyle fail.[4]

As a secondary matter, defendants argue that Doyle is entitled to qualified immunity because there was no constitutional violation. The Court need not reach this issue as no constitutional violation has been established.

**(d) City of Euclid**

Count Eleven is entitled, "Negligent Hiring, Retention and Supervision."  In that count, plaintiffs also allege that the City and Chief Brickman have failed to train, supervise, discipline, or otherwise control Doyle. Although § 1983 is not mentioned in this count, plaintiffs appear to allege that the City is liable under  § 1983 as they use the term "deliberate

---

[4]     Plaintiffs argue in the factual section of their brief that they were interrogated without their parents and were not read their *Miranda* rights.  But plaintiffs do not set forth a cause of action based on these assertions.  Regardless, "the law in Ohio does not require that a juvenile's parent or legal custodian be present during a custodial interrogation. This court has held that ... parental presence is not constitutionally mandated." *State v. Kimmie*, 2013 WL 5310457 (Ohio App. 8th Dist. 2013) (all citations omitted). Additionally, "plaintiff cannot state a cause of action under § 1983 based solely on the failure to give *Miranda* warnings; the proper remedy for a *Miranda* violation is the exclusion of evidence in a criminal proceeding." *Cockshutt v. Ohio*, 2013 WL 2417968 (S.D.Ohio June 3, 2013) (citation omitted)

17

indifference."[5]  To the extent plaintiffs are also alleging a state law negligence claim, that will be addressed below with the state law claims.

A plaintiff who sues a municipality for a constitutional violation under § 1983 must prove that the municipality's policy or custom caused the alleged injury. *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 690–91 (1978). "The standard for municipal liability in negligent hiring, training, and retention is deliberate indifference. However, even before reaching the issue of whether the municipality was deliberately indifferent ... the plaintiff must demonstrate a constitutional violation at the hands of an agent or employee of the municipality." *Stricker v. Township of Cambridge*, 710 F.3d 350 (6th Cir. 2013) (citations and internal quotations omitted).  The failure of "ordinary care" is insufficient to establish municipal liability under § 1983.  Municipal defendants may only be sued under § 1983 for their own unconstitutional or illegal policies and may not be held vicariously liable for the unconstitutional acts of their employees. *Fox v. DeSoto*, 489 F.3d 227 (6th Cir. 2007).

To succeed on a failure to train or supervise claim, the plaintiff must prove that (1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury. *Ellis ex rel. Pendergrass v. Cleveland Mun. School Dist*. 455 F.3d 690 (6th Cir. 2006) (citations omitted).  The Sixth Circuit has identified two situations

---

[5]     Plaintiffs also allege that defendants were negligent.  Of course, to hold a municipality liable under § 1983, a plaintiff must demonstrate deliberate indifference and negligence will not suffice. *Lee v. Metropolitan Govt. of Nashville*, 432 Fed. Appx. 435 (6th Cir. 2011).  For this reason, the Court assumes the plaintiffs intended to assert a state law negligence claim against the City.

justifying a conclusion of deliberate indifference in claims of failure to train or supervise: 1) failure to provide adequate training in light of foreseeable consequences that could result from a lack of instruction and 2) failure to act in response to repeated complaints of constitutional violations by its officers. *Id.*

Plaintiffs assert that the City of Euclid ignored the past decade's complaints against Doyle for violence against juveniles and failed to discipline him for such.  Plaintiffs submit what appears to be Doyle's personnel file which plaintiffs seem to argue establishes that Euclid either had a policy permitting excessive force against juveniles or was deliberately indifferent to these complaints.  The records show the following (Doc. 51 Exs. 14-31).

1.  A Euclid police captain reviewed an October 2001 complaint and determined that Doyle "was less than professional and used excessive and unnecessary force" to effectuate a legitimate investigative detention and arrest after observing drug activity.  Doyle was counseled, received a written reprimand for excessive use of force, and "will receive additional training in the areas of search and seizure, laws of arrest, and use of force."

2.  There was no evidence to support an August 2002 complaint of excessive force in effectuating an arrest, but Doyle was counseled for his use of the comment about "... the apple falling not far from the tree."

3.  A review determined that a September 2002 complaint of use of excessive force and racial slurs in effectuating an arrest was unfounded.

4. A review of a November 2002 complaint concluded that Doyle did not do anything procedurally wrong but he was advised to "soften" his approach to avoid abuse perceptions.

5. A review of a September 2003 complaint concluded that Doyle acted within

19

departmental policies and procedures when responding to behavior he regarded as suspicious.

6. A review of a May 2004 complaint concluded that Doyle acted within departmental policies and procedures when investigating a theft/attempted burglary.  Doyle was found to be remiss in not generating a police incident report and he was advised of that.

7.  A September 2005 complaint was determined to be unfounded arising out of Doyle's administering a spanking of a minor in his mother's presence and at her direction after investigating agencies determined Doyle's actions did not constitute child abuse.

8.  An August 2005 complaint that Doyle wrongfully stopped a school age child during school hours was unfounded.  Doyle stopped the boy who appeared to be in violation of a Euclid daytime curfew.  The boy was uncooperative but once Doyle determined that he attended a Cleveland school which was not in session, he was permitted to continue on his way.

9.  Doyle received a written reprimand on November 4, 2005 for violating departmental Rules and Regulations.  It was determined that he "reacted very inappropriately" when responding to a residence involving an 11 year old boy and his grandmother.  Doyle "took it upon [himself] to discipline the child through corporal punishment. [He] called the child names and smacked him on the side of the head."  Doyle was sent for a fitness for duty assessment, had to follow-up through the Concern Program, and was required to attend a mandatory counseling session with the Chief of Police, division commander, and lieutenant. He was warned that future incidents would be handled by progressive discipline.

10.  The review of a September 2005 complaint concluded that Doyle did not use excessive force when effectuating the arrest of a 13 year old who had stolen a bicycle. Doyle

20

did strike the boy in the back of the head in order to gain compliance as he was being uncooperative. Doyle was counseled as to that action.

11.  Doyle received an oral reprimand on April 4, 2007 for failing to document his use of force in a situation involving the removal of his weapon from his holster.

12. Doyle received a commendation for his professionalism on May 16, 2009.

13.  Doyle received a written reprimand on November 20, 2009 for failing to write a report of an incident he had responded to.

14.  In December 2010, a review concluded that Doyle did not use excessive force on juvenile suspects in a shoplifting arrest although he was counseled for "using his foot as an attention getter."

15.  An October 2012 complaint of excessive force against Doyle was not sustained arising out of his interaction with a combative juvenile.  However, a police sergeant concluded that because this involved the third allegation against Doyle within the preceding 6 months, all deemed to be unfounded, it was recommended that he attend a seminar on "How to Deliver Exceptional Customer Service."

16. It was concluded in December 2012 that Doyle did not arbitrarily single out and harass the complainant's sons in several different incidents.  However, it was noted in the police lieutenant's review that Doyle had a number of complaints against him in the way he dealt with people.  Ultimately, Doyle's assignment was changed from the A Beat to the C Beat.

Plaintiffs also argue that the City ignored "warning signs" in Doyle's Euclid Police evaluations which characterized him as "very aggressive," especially with regard to juveniles,

and fond of "self-initiated stops."  The evaluations submitted by plaintiffs, however, must be considered in their full context (Doc. 51 Exs. 33-38):

1. A 2000 evaluation stated, "Paul is very aggressive which allows him to make some very good arrests.  Though Paul has his cops assignments he frequently assists other officers and responds to calls. ... Paul should continue the fine work he is doing."

2. A 2001 evaluation stated, "He is very involved in the juvenile diversion programs (city and the county)...  He is very aggressive on juvenile problems in the target areas. This led to 3 complaints which resulted in him receiving a written reprimand.... Needs not to be so intense when dealing with the public in criminal matters..."

3. A 2003 evaluation stated, "Paul is an aggressive vigilant officer who actively patrols his beat.  He can be counted on to give his best regardless of the situation..."

4. A 2005 evaluation stated, "Paul is highly knowledgeable as a police officer.  He is an aggressive patrolman who can be counted on to investigate any type of complaint."  One written reprimand during the period was acknowledged.

5. A mid-year 2005 evaluation identified Doyle's individual strengths as "excellent street cop, very knowledgeable, aggressive."

"To succeed on a municipal liability claim, a plaintiff must demonstrate an official policy or custom that is either 'facially unconstitutional as written or articulated' or has been implemented in such a manner as to demonstrate 'deliberate indifference' to the 'plainly obvious' risk of constitutional violation."  *Drake v. Village of Johnstown, Ohio*, --- Fed.Appx. ----, 2013 WL 4407096 (6th Cir. 2013) (citing *Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir.2006).  Municipal liability "must rest on a direct causal connection between the

policies or customs of the local government entity and the constitutional injury to the plaintiff." *Id.*

The personnel records do not demonstrate deliberate indifference to the plainly obvious risk of constitutional violation.  Plaintiffs appear to argue that Doyle had a record of excessive force against juveniles and was too aggressive as a police officer, but that the City was deliberately indifferent to the risk of a constitutional violation. Plaintiffs do not argue that the record shows that Doyle had a pattern of arresting juveniles without probable cause.  The Court disagrees with plaintiffs. The records show that the City thoroughly investigated the allegations and in many cases determined they were unfounded. Where fault was found, Doyle was reprimanded, counseled, or advised. There is no evidence of an unwritten official policy of permitting excessive force against juveniles, or arresting them without probable cause.  Furthermore, while plaintiffs pick out all the references concerning Doyle in his evaluations as being "aggressive," it is only plaintiffs' interpretation that the connotation is negative rather than positive.

As stated earlier, to succeed on a failure to train, the plaintiffs must prove that the City was deliberately indifferent to Doyle's inadequate training or supervision which caused plaintiffs' injury.  Plaintiffs argue in full:

> The facts established herein support that, given Doyle's very violent, troubling history, the City knew to a 'moral certainty' of the need for more or different raining [sic] for him. In fact, the City sent Doyle to a seminar on 'How to Deliver Exceptional Customer Service.'  The City was on notice for years of the need for Dole [sic] to: (1) get off the street or (2) get significant re-training.  The need for the City to take action was so obvious that its failure to do so is deliberate indifference to the residents of Euclid's constitutional rights.

(Doc. 51 at 28)  The evidence submitted by plaintiffs does not show that Euclid acted with

23

deliberate indifference to Doyle's training, supervision, or discipline. In fact, Euclid investigated every complaint made against him and where the complaint was substantiated, Doyle received discipline and other training or counseling.

For these reasons, § 1983 claims against the City must be dismissed.

**(2) State Law Claims**

**(a) Studley**

As with the federal claims, state law claims asserted against a defendant in his official capacity are considered a claim against the municipality. Because the City of Euclid is a party, the claims against Studley in his official capacity are duplicative. *See Warner v. Wood County Sheriff's Dept.*, 2008 WL 4449450 (N.D.Ohio September 30, 2008) (citations omitted) ("Chapter 2744 of the Ohio Rev.Code provides that a suit against an employee of a political subdivision in the employee's official capacity constitutes a suit against the political subdivision.")

**(b) City of Euclid**

Counts Six, Seven, Eight, Nine, and Twelve are asserted against all defendants which would include the City. Count Eleven is specifically asserted against the City. Defendants contend that these claims, with the exception of Count Twelve which is addressed separately below, fail as a matter of law based on state law immunity granted to the City given that none of the statutorily enumerated exceptions to immunity apply. O.R.C. § 2744(A) and (B). Plaintiff does not present any argument or evidence disputing defendants' assertions regarding the City. The Court agrees that the state law claims against the City must be dismissed. *See also Morales v. Franklin County Sheriffs*, 2013 WL 5492293 (S.D.Ohio

24

October 2, 2013).

**(c) Brickman**

Defendants likewise argue that Chief Brickman is entitled to immunity in that there is no evidence that he acted maliciously, in bad faith, or in a reckless manner.  O.R.C. § 2744(A).  In only general terms, plaintiffs assert that "an officer" is not entitled to immunity when acting in such a manner.  Plaintiffs do not specifically address either Doyle or Brickman but only state, "The aforementioned testimony, evidence, documents[,] and transcripts set forth genuine issues of material fact that the defendants acted in an intentional, bad faith, wanton [,]or reckless manner in stopping, detaining, interrogating, arresting [,] and prosecuting the plaintiffs."  (Doc. 51 at 38) However, the evidence shows that Brickman was not involved in these actions.  He is entitled to statutory immunity.

**(d) Doyle**

Under Ohio law, the employee of a political subdivision, such as Doyle, is immune from suit for injury unless:

> (a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;
>
> (b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; [or]
>
> (c) Civil liability is expressly imposed upon the employee by a section of the [Ohio] Revised Code.

O.R.C. § 2744.03(A)(6). Under this statute, "a governmental employee acting within the scope of his employment is immunized from liability arising from the negligent performance of his duties." *Foos v. City of Delaware*, 492 Fed.Appx. 582 (6th Cir.2012) (citing *Linley v.*

25

*DeMoss*, 83 Ohio App.3d 594 (1992) ).

The state law claims asserted against Doyle are false arrest, false imprisonment, intentional infliction of emotional distress, malicious criminal prosecution, and assault. Plaintiffs contend that Doyle acted maliciously, in bad faith, or recklessly as to these allegations.  Because the claims fail on the merits, as discussed below, recklessness is not demonstrated.

### (i) false arrest and false imprisonment

"To succeed on a claim of false arrest or imprisonment, a plaintiff must establish that the defendants were without legal authority to arrest and detain him and that the detention was not accomplished pursuant to accepted legal procedures." *Drake v. Village of Johnstown, Ohio*, --- Fed.Appx. ----, 2013 WL 4407096 (6th Cir. 2013) (citing *Krantz v. City of Toledo Police Dep't*, 365 F.Supp.2d 832, 837 (N.D.Ohio 2005)) "The existence of probable cause to arrest defeats a false arrest claim." *Id.* (citing *Harvey v. Horn*, 514 N.E.2d 452 (Ohio App.1986). "Probable cause is a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense with which he is charged." *Id.* (citing *Melanowski v. Judy*, 131 N.E. 360, 361 (Ohio 1921)).

Because the Court has found that plaintiffs are precluded from challenging probable cause, this claim fails.

### (ii) malicious prosecution

"To state a claim for malicious prosecution under Ohio law, a plaintiff must show that the charging officer did not have probable cause to charge the plaintiff." *Rainey v. Patton*, ---

26

Fed.Appx. ----, 2013 WL 4105650 (6th Cir. August 15, 2013) (citations omitted). "An officer has probable cause to arrest if the information he possessed at the time of the arrest was sufficient to lead a reasonable officer to conclude that the arrestee has committed or is committing a crime." *Id*. at 511. "Likewise, an officer has probable cause to prosecute if, at the time he initiated criminal proceedings, the information he possessed would lead a reasonable officer to conclude that the arrestee had committed the charged offense." *Id.* (citations omitted).

As with the preceding claims, probable cause precludes the plaintiffs' claims.

**(iii) intentional infliction of emotional distress**

Under Ohio law, to prevail on an intentional infliction of emotional distress claim, plaintiffs must prove that Doyle "(1) intended to cause [them] serious emotional distress; (2) the conduct was extreme and outrageous; and (3) the conduct was the proximate cause of [plaintiffs'] distress. *Colston v. Cleveland Public Library*, 2013 WL 1500438 (6th Cir. April 15, 2013) (citations omitted) "The alleged conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id*.

Plaintiffs assert that the facts show that Doyle acted outrageously in accosting them. This Court disagrees that plaintiffs have neared the satisfaction of the elements of this claim so as to survive summary judgment.

**(iv) assault**

"If an officer uses more force than is necessary to make an arrest and protect himself from injury, he is liable for assault and battery." *D'Agastino v. City of Warren*, 75 Fed.Appx.

27

990 (6th Cir. 2003) (citations omitted).

The Complaint alleges that Doyle's "willful threats and attempts to harm and touch the plaintiffs offensively" constituted an assault.  This is presumably based on plaintiffs' testimony that Doyle threatened to harm them physically and use his nightstick on them.  However, in their brief, plaintiffs merely argue that this claim rises and falls with the Fourth Amendment excessive force claim.  No other specific argument is made as to this claim.  Because the Court has found that Doyle did not use excessive force, this claim fails.

**(e) Ohio Public Records Law**

Plaintiffs do not address this claim or dispute defendants' assertions that a writ of mandamus is the appropriate remedy to enforce the public's right to gain access to public records and the statutory requirements for a proper mandamus petition have not been met.  Defendants are entitled to summary judgment on this claim for the reasons stated in their motion.

**Conclusion**

For the foregoing reasons, defendants' Motion for Summary Judgment is granted.

IT IS SO ORDERED.


 /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
Dated: 11/1/13              United States District Judge

28